Citation Nr: 1546231 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 11-09 585 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
 in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for insufficient sphincter control with bowel incontinence.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected insufficient sphincter control with bowel incontinence.


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J.N. Moats, Counsel


INTRODUCTION

The Veteran served on active duty from September 1958 to July 1960.

This appeal to the Board of Veterans' Appeals (Board) arose from a September 2010 rating decision in which the RO, inter alia, granted service connection for insufficient sphincter with bowel incontinence, and assigned a 10 percent rating effective July 27, 2009, the date of claim. In September 2010, the Veteran filed a notice of disagreement (NOD). A statement of the case (SOC) was issued in March 2011, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) also in March 2011.

Because the appeal involves disagreement with the initial rating assigned following the grant of service connection for insufficient sphincter with bowel incontinence, the Board has characterized this matter in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disability).

In June 2011, the Veteran testified during a Board video-conference hearing before the undersigned Veterans Law Judge; a transcript of the hearing is of record. During the hearing, the undersigned Veterans Law Judge granted the Veteran's motion to advance this appeal on the Board's docket. See 38 U.S.C.A. § 7107(a)(2) (West 2014); 38 C.F.R. § 20.900(c) (2015). 

In September 2011, the Board granted an initial 30 percent disability rating for insufficient sphincter control with bowel incontinence, effective July 27, 2009. The Veteran appealed the September 2011 Board decision to the United States Court of Appeals for Veterans Claims (Court). In March 2013, the Court issued a Memorandum Decision, setting aside the Board's decision, and remanding the claim to the Board for further proceedings consistent with the decision. 

In September 2013, the Board expanded the appeal to include the matter of entitlement to a TDIU consistent with Rice v Shinseki, 22 Vet. App. 447 (2009) and remanded the Veteran's claims to the RO, for further action, to include additional development of the evidence and for consideration of a TDIU on an extra-schedular basis. After completing the requested development, the RO continued to deny the claims (as reflected in a June 2015 supplemental SOC (SSOC)) and returned the matters on appeal to the Board for further consideration.

The Board notes that this appeal is now being processed utilizing the paperless, electronic Virtual VA and Veterans Benefit Management System (VBMS) claims processing systems. 

The Board's decision addressing the claim for an initial rating in excess of 30 percent for insufficient sphincter control with bowel incontinence is set forth below. The claim for a TDIU is addressed in the remand following the order; that matter is being remanded to the agency of original jurisdiction (AOJ). VA will notify the appellant when further action, on his part, is required.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim herein decided have been accomplished. 
 
 2. Since the July 27, 2009, effective date of the award of service connection, the pertinent lay and medical evidence collectively suggests that the Veteran's insufficient sphincter with bowel incontinence disability has been manifested by extensive leakage and fairly frequent involuntary bowel movements, but without complete loss of sphincter control.

3. At all times pertinent to the current claim, the schedular criteria have been adequate to evaluate the disability under consideration.


CONCLUSION OF LAW

With resolution of all reasonable doubt in the Veteran's favor, the criteria for an initial 60 percent rating for insufficient sphincter with bowel incontinence are met. 38 U.S.C.A. §§ 1155 , 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102 , 3.159, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7332 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

Notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1).

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353 -23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Id. 

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ) in this case, the RO, to include the AMC). Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id. 

With respect to the claim for a higher initial rating for insufficient sphincter with bowel incontinence, a March 2010 pre-rating letter provided notice to the Veteran regarding what information and evidence was needed to substantiate what was then a claim for service connection, as well as what information and evidence must be submitted by the Veteran and what information and evidence would be obtained by VA. The letter also specifically informed the Veteran to submit any evidence in his possession pertinent to the claim on appeal, and provided notice of general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. 

Following the award of service connection and the Veteran's disagreement with the initial rating assigned, no additional VCAA notice for the downstream higher rating issue was required. See Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003). Nonetheless, the May 2011 SOC set forth applicable criteria for evaluating the disability under consideration-the timing and form of which suffices, in part, for Dingess/Hartman.

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matters on appeal. Pertinent medical evidence associated with the claims file consists of the Veteran's service treatment records, VA treatment records, and the reports of September 2010 and March 2015 VA examinations. Also of record and considered in connection with the appeal is the transcript of the Veteran's June 2011 Board hearing, as well as various written statements provided by the Veteran and by his representative, on his behalf. The Board also finds that no further AOJ action on the matter herein decided, prior to appellate consideration, is warranted. 

The Board notes that the Veteran was provided an opportunity to set forth his contentions during a June 2011 hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Here, the Board finds that there has been sufficient compliance with the duties set forth in 38 C.F.R. 3.103(c)(2), and that the hearings were legally sufficient. 

As regards to the claim for an initial higher rating, it is noted that, during the hearing, the undersigned identified the issue on appeal. In addition, the hearing focused on the elements necessary to substantiate the Veteran's claim, and information was elicited regarding the nature and severity of his insufficient sphincter control with bowel incontinence. Therefore, not only was the "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. See Bryant, 23 Vet. App. at 497. Although the undersigned did not explicitly suggest the submission of any specific, additional evidence; however, on these facts, such omission was harmless. The record revealed that he received ongoing VA medical treatment for his disability at the VA. As discussed further below, on subsequent remand in September 2013, the Board directed the RO to obtain any outstanding VA treatment records. Notably, neither the Veteran nor his attorney has asserted that there was any prejudice with regard to the conduct of the hearing. 

As for the development sought by the Board in the September 2013 remand, a remand by the Board confers upon the veteran, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v West, 11 Vet. App. 268, 271 (1998). Here, the Board finds that the AOJ substantially complied with the Board's remand directives. See Dyment v. West¸ 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall, 11 Vet. App. 268 where Board's remand instructions were substantially complied with); see also D'Aries v. Peake, 22 Vet. App. 97, 105-106 (2008) (finding that substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required).

In the prior remand, the Board instructed the AOJ to obtain from the Bay Pines, Florida VA Medical Center (VAMC) and Pittsburgh, Pennsylvania VA Healthcare System (VAHCS) all outstanding VA treatment records dated from June 2009 to March 2011 from October 2011 to April 2013 and from July 2013 to the present. All such records have been associated with the Veteran's Virtual VA file. 

The AOJ was also directed to send additional notice requesting that the Veteran identify any additional treatment and afford the Veteran a VA examination. Although it does not appear that additional notice was sent to the Veteran as directed in the September 2013 remand, the Board finds no prejudice to the Veteran in proceeding with this decision as he had previously been notified to submit all outstanding pertinent evidence. In other words, the Veteran had actual knowledge that he should submit or identify any additional pertinent records. Likewise, the Veteran is represented by a private attorney who, as his representative, also has actual knowledge to submit or identify any outstanding, pertinent records. In a May 2015 letter, the Veteran's representative attorney also indicated that all remand instructions have been completed.

Furthermore, in this case, in response to the most recent SSOC issued in June 2015, the Veteran's representative did not identify any outstanding medical evidence. Moreover, as discussed further below, a VA examination to address the severity of the Veteran's insufficient sphincter control with bowel incontinence has been obtained in March 2015, that is adequate for appellate review. Accordingly, the Board finds that the AOJ has substantially complied with the Board's remand directives. See Dyment v. West¸ 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall, 11 Vet. App. 268 where Board's remand instructions were substantially complied with); see also D'Aries v. Peake, 22 Vet. App. 97, 105-106 (2008) (finding that substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required).

In summary, the duties imposed by the VCAA have been considered and satisfied. The appellant has been notified and made aware of the evidence needed to substantiate the claim decided herein, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with this claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the appellant or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006)(rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).


II. Analysis

The Veteran is seeking an initial higher rating for his insufficient sphincter control with bowel incontinence. In written statements of record and during his Board hearing, he has asserted that he suffers from severe fecal incontinence necessitating the need to wear a pad daily. 

Historically, the Veteran was granted service connection for insufficient sphincter with bowel incontinence in a September 2010 rating decision. A rating of 10 percent was assigned, effective July 27, 2009. Subsequently, in September 2011, the Board granted an initial 30 percent disability rating for insufficient sphincter control with bowel incontinence, effective July 27, 2009. 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where, as here, the question for consideration is entitlement to higher rating following the initial award of service connection, evaluation of the medical evidence to consider the appropriateness of "staged rating" (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson, 12 Vet. App. at 126. The following analysis is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

The Veteran's insufficient sphincter with bowel incontinence disability is rated under 38 C.F.R. § 4.114 , Diagnostic Code 7332, which provides that a noncompensable rating is warranted when the disability is either healed or slightly disabling and without leakage. A 30 percent rating is warranted when the condition is manifested by occasional involuntary bowel movements, which necessitates wearing of pad. A 60 percent rating is assigned when there is extensive leakage and fairly frequent involuntary bowel movements. A maximum 100 percent rating requires that the condition be productive of a complete loss of sphincter control.

By way of background, a July 2008 report from a private physician, Dr. T., notes that the Veteran had complained of incontinence and constipation. The Veteran had indicated loss of control especially at night when he had fecal material on his underwear. The Veteran also reported diarrhea following disimpaction. An anorectal examination revealed a slightly lax sphincter tone. The examiner's impression was slight decrease in sphincter tone and overflow incontinence secondary to impaction. On July 27, 2009, the Veteran filed a claim for service connection for bowel incontinence as secondary to hemorrhoids. 

On VA examination in September 2010, the Veteran reported experiencing chronic constipation his whole life, and indicated that stool leakage began approximately 10 years prior. He reported that he could go 3 to 5 days without a bowel movement, and noted that he had impaction of stool where he had to dig out stools at times. He indicated that he was unable to state how often he had stool leakage, but noted that he wore a pad for stool incontinence if wearing a good suit. On physical examination, there were no current external hemorrhoids, evidence of fecal leakage, or evidence of bleeding or rectal prolapsed. Sphincter tone was reduced. The examiner diagnosed chronic constipation with impacted bowel. 

In a March 2011 statement, the Veteran wrote that he had been wearing a pad since late November 2010. He reported six extensive leakages and on and off involuntary leakage. 

During the June 2011 Board hearing, the Veteran testified that he started wearing pads full time in December 2010 due to his fecal leakage. He indicated that he sometimes changed these pads 2 to 3 times a day, but there were some days he did not need to wear or change a pad. The Veteran noted that he got these pads prescribed by VA. Prior to using pads, the Veteran indicated that he used toilet paper for his leakage problems. 

In a June 2011 statement, the Veteran's wife indicated that she had been washing the Veteran's soiled underwear with fecal content for more than 10 years, and that he gotten a small amount of fecal leakage on the bed sheets. She indicated that as of December 2010, he had been forced to wear a diaper pad every day because he had experienced extensive leakage from time to time. She reported that when they were away from the home, he had experienced leakage that necessitated changing his underwear and thus, he has had to carry a few pads in the trunk of the vehicle. She also continued that several times he had a few episodes occur which he was not
aware that involved extensive leakage and eventually the odor gave an explanation of leakage. She also submitted a June 2011 calendar where she tracked the Veteran's bowel movements and leakage. This calendar reflected approximately 10 days of self-reported minimal, moderate, and extensive leakage. Extensive leakage was indicated on half of these notations.

A February 2011 VA treatment record shows that the Veteran had been referred to gastroenterology for evaluation of chronic constipation. He was prescribed MiraLax. A follow-up December 2011 VA treatment record showed that the Veteran presented complaining of fecal incontinence. Follow up VA treatment records showed an assessment of bowel problems consisting of constipation and fecal incontinence. A May 2014 VA treatment records showed that the Veteran complained of leakage. He wore 5 to 6 diapers a day and took Miralax every day. Moreover, an October 2014 VA treatment records showed that the Veteran was still having stool seepage. However, while it used to be super intense, it was now described as moderate. The impression was chronic constipation with fecal incontinence. 

In March 2015, the Veteran was afforded another VA examination. The Veteran's VBMS record was reviewed. The Veteran reported chronic constipation with fecal leakage. He averaged 2 to 3 pads daily. The Veteran also took continuous medications for such disorder. The examiner noted that the Veteran had leakage necessitating wearing a pad. On examination, there was lax anal sphincter, but no leakage on pad at 11:00 am and pad had been on since 8:00 am. The examiner also indicated that the Veteran was able to perform light and sedentary activities and that there was no significant change in severity since 2009. 

A follow up April 2015 treatment record observed a long standing history of stool incontinence since 2003. The Veteran was still on MiraLax for chronic constipation. 

Considering the evidence throughout the course of the appeal in light of the applicable criteria, and resolving all reasonable doubt in the Veteran's favor, the Board finds that a 60 percent, but no higher, rating for insufficient sphincter with bowel incontinence is warranted from the July 2009 effective date of the grant of service connection.

The above-described evidence reflects the Veteran's assertion that he wears a pad almost daily for leakage that has been described as extensive. During the Veteran's Board hearing, he stated that he has used pads since December 2010 for his bowel incontinence problems, and that he used toilet paper prior to the pads. He noted that he wore these pads almost daily and occasionally had to change the pads 2 to 3 times per day. In a June 2011 statement of record, his wife also reported extensive leakage for many years requiring the need to frequently change underwear or wear pads as well as change bed sheets. As laypersons, the Veteran and his spouse are competent to report on matters observed or within his or her personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). As such, they are competent to testify about observable symptoms or injury residuals, such as frequent leakage. See 38 C.F.R. § 3.159(a)(2); Barr v. Nicholson, 21 Vet. App. 303 (2007). 

Moreover, the July 2008 private examiner and September 2010 VA examiner also confirmed that the Veteran experienced bowel incontinence secondary to his insufficient sphincter. Moreover, the most recent VA examiner also observed fecal leakage necessitating wearing a pad and indicated that the Veteran's disability had remained unchanged since 2009. Collectively and when resolving the benefit of the doubt in favor of the Veteran, this evidence suggests that the Veteran has had extensive leakage and fairly frequent involuntary bowel movements, warranting the next higher, 60 percent rating under Diagnostic Code 7332, since the July 29, 2009 effective date of the grant of service connection. 

However, a maximum 100 percent disability rating is not warranted at any point pertinent to this claim as there has been no findings or reports of complete loss of sphincter control.

The Board has also considered whether there are any other potentially applicable diagnostic codes pursuant to which any higher rating for the Veteran's service-connected insufficient sphincter with bowel incontinence could be assigned, but has found none.

The above determinations are based upon consideration of applicable provisions of VA's rating schedule. Additionally, the Board finds that there is no showing that, at any pertinent point, the disability under consideration has reflected so exceptional or so unusual a disability picture as to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321.

The threshold factor for extra-schedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). See also 38 C.F.R. § 3.321(b)(1); VA Adjudication Procedure Manual, Pt. III, Subpart iv, Ch. 6, Sec. B(5)(c). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for this disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. See VAOGCPREC 6-96 (Aug. 16, 1996). Thun v. Peake, 22 Vet. App. 111 (2008).



If the rating schedule does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" (including marked interference with employment and frequent periods of hospitalization). 38 C.F.R. § 3.321(b)(1). If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step: a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. See Thun, 22 Vet. App. at 111.

In this case, the Board finds that the schedular criteria are adequate to rate the disability under consideration at all pertinent points. The rating schedule fully contemplates the described symptomatology, to include extensive leakage and involuntary bowel movements necessitating the need to wear pads daily as reported by the Veteran, and provides for a higher rating than that assigned based on more significant impairment. Notably, there is no medical indication or argument that the rating schedule is inadequate to evaluate the disability under consideration.

The Board further notes that, pursuant to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. As the Board has fully considered all of the Veteran's symptoms in evaluating the service-connected disability, and the evaluation of multiple service-connected disabilities is not presently at issue, the Board finds that the holding of Johnson is inapposite here.

Under these circumstances, the Board finds that the requirements for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) are not met, and that referral of the claim for extra-schedular consideration is not required. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

For all the foregoing reasons, the Board finds that an initial 60 percent but no higher rating for the Veteran's insufficient sphincter with bowel incontinence is warranted. The Board has favorably applied the benefit-of-the-doubt doctrine in granting an initial 60 percent rating, but finds that the preponderance of the evidence is against assignment of any higher rating for the disability (to include pursuant to Fenderson, supra) at any pertinent point. See 38 U.S.C.A. § 5107(b) ; 38 C.F.R. §§ 3.102 , 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

An initial 60 percent rating for insufficient sphincter with bowel incontinence, from July 27, 2009, is granted, subject to the legal authority governing the payment of VA compensation.


REMAND

Unfortunately the Board finds that further AOJ action on the remaining claim on appeal is warranted, even though such will, regrettably, further delay an appellate decision on this matter. 

Regarding the claim for a TDIU due to insufficient sphincter control with bowel incontinence, the Board observes that total disability ratings for compensation based upon individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. See 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2015). In light of the Board's decision herein, the Veteran now meets the scheduler criteria for TDIU. 

This matter was previously remanded for an opinion concerning the functional impact the Veteran's service-connected insufficient sphincter control with bowel incontinence had on his employment. The March 2015 VA examiner determined that light and sedentary activities may be performed. However, he failed to offer a rationale for this finding or provide any further description concerning the Veteran's functional impairment. The examiner also failed to address the report of a private August 2013 employability evaluation by Dr. C.W. that determined that it was at least as likely as not that the Veteran's service-connected insufficient sphincter with bowel incontinence rendered him unable to obtain and maintain a substantially gainful occupation as specifically directed by the Board in its prior remand. See Stegall v. West, 11 Vet. App. 268 (1998) (remand by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms).

Once VA undertakes the effort to provide an examination when developing a service connection claim, even if not statutorily obligated to do so, it must provide one that is adequate for purposes of the determination being made. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (finding that the relevant inquiry when assessing the probative value of a medical opinion is whether the opinion reflects application of medical principles to an accurate and complete medical history). Under these circumstances, the Board finds that further medical opinion in connection with the TDIU claim is warranted. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; McLendon, 20 Vet. App. at 83. 

Hence, the AOJ should arrange for the March 2015 VA examiner to provide an addendum opinion to address the functional effects of the Veteran's service-connected insufficient sphincter control with bowel incontinence on activities of daily living, to particularly include the physical acts required for substantially gainful employment. The AOJ should only arrange for the Veteran to undergo another VA examination if one is deemed necessary in the judgment of the physician designated to provide the requested opinion.

Prior to obtaining an additional opinion, to ensure that all due process requirements are met and that the record is complete, the AOJ should undertake appropriate action to obtain and associate with the claims file all outstanding, pertinent records.

As for VA records, the claims file currently includes outpatient treatment records from the VA Medical Center (VAMC) in Bay Pines, Florida and from the Pittsburgh, Pennsylvania VA Healthcare System (VAHCS), dated to June 2015; however, more recent records from these facilities may exist. Records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). Hence, the RO must obtain from the Bay Pines VAMC and from the Pittsburgh VAHCS all outstanding, pertinent records of evaluation and/or treatment of the Veteran, dated from June 2015 to the present, following the current procedures prescribed in 38 C.F.R. § 3.159 as regards requests for records from Federal facilities. 

The AOJ should also give the Veteran another opportunity to present information and/or evidence pertinent to the remaining claim on appeal. In its letter, the AOJ should explain what is needed to support a claim for a TDIU due to insufficient sphincter control with bowel incontinence. The AOJ's letter to the Veteran should explain that he has a full one-year period for response. See 38 U.S.C.A § 5103(b)(1) (West 2014); but see 38 U.S.C.A. § 5103(b)(3) (West 2014) (amending the relevant statute to clarify that VA may make a decision on a claim before the expiration of the one-year notice period). 

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015).

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the claim remaining on appeal. 

Accordingly, this matter is hereby REMANDED for the following action:

1. Obtain from the Bay Pines VAMC and from the Pittsburgh VAHCS all outstanding, pertinent records of evaluation and/or treatment of the Veteran, dated from June 2015 to the present. Follow the procedures set forth in 38 C.F.R. § 3.159(c) as regards requesting records from Federal facilities. 

2. Send to the Veteran and his attorney a letter requesting that the Veteran provide sufficient information, and if necessary, authorization to obtain any additional evidence pertinent to the claim remaining on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, all outstanding, pertinent, private (non-VA) records.

In its letter, explain what is needed to support a claim for a TDIU due to insufficient sphincter control with bowel incontinence.

Also, clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period). 

3. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the record, arrange to obtain an addendum opinion by the March 2015 examiner, based on review of the record, to address the functional impairment of the Veteran's insufficient sphincter control with bowel incontinence on his daily activities, to specifically include his employment. 

If that examiner is no longer employed by VA or is otherwise unavailable, document that fact in the record, and arrange to obtain an opinion from another appropriate physician based on claims file review, if possible. Only arrange for the Veteran to undergo another VA examination if one is deemed necessary in the judgment of the individual designated to provide the addendum opinion. 

The contents of the entire electronic record (on VBMS and Virtual VA), to include a complete copy of this REMAND, must be made available to the designated individual, and the addendum opinion/examination report should include discussion of the Veteran's documented medical history and assertions. 

Considering all pertinent current findings along with the Veteran's documented medical history and assertions, the physician should discuss the functional effects of the Veteran's service-connected insufficient sphincter control with bowel incontinence on activities of daily living, to particularly include the physical acts required for substantially gainful employment. 

In particular, the physician should describe what types of employment activities would be limited because of the service-connected disability, what types of employment would not be limited (if any), and whether any limitation on employment is likely to be permanent. In rendering these findings, the physician should specifically consider and discuss the August 2013 employability evaluation by Dr. C.W. 
 
The physician should set forth all examination findings, together with the complete rationale for the conclusions reached, in a printed (typewritten) report.

5. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998). 

6. After completing the requested actions, and any additional notification and/or development deemed warranted, readjudicate the claim remaining on appeal in light of all pertinent evidence (to include all that added to the claims file since the last adjudication) and legal authority. 

7. If the benefit sought on appeal remains denied, furnish to the Veteran and his attorney an appropriate SSOC that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).
 
This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). The AOJ is reminded that this appeal has been advanced on the Board's docket.




______________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs